UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-25 DARRELL BRYANT,

    Defendant.
                                             /

Case No. 06-20465

Honorable Nancy G. Edmunds

## OPINION AND ORDER DENYING DEFENDANT DARRELL BRYANT'S MOTION TO SUPPRESS [1015]

    Defendant Darrell Bryant (D-25) is charged in Counts One and Two of a 50 Count Second Superseding Indictment with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d), 1963(a), where it is alleged that Defendant conspired to murder members of another motorcycle club and conspired to deliver more than 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1) and 846. Defendant Bryant is also charged in Count Seventeen with conspiring to possess with the intent to distribute and distributing cocaine in violation of 21 U.S.C. § 846.[1]

    This matter comes before the Court on Defendant's motion for an evidentiary hearing and to suppress evidence seized pursuant to a search warrant issued on June 4, 2007 and executed on June 5, 2007. The warrant authorized the search of Defendant Bryant's residence at 829 N. Green Street, Detroit, Michigan. Defendant's motion argues that the

---

    [1]Count Forty Nine also alleges a claim of forfeiture, 21 U.S.C. § 853, against Defendant Bryant.

affidavit submitted in support of the search warrant lacked probable cause because the information in it was stale and lacked reliability. For the reasons stated below, Defendant Bryant's motion to suppress is DENIED.

**I.    Facts**

The affidavit submitted in support of the warrant to search Defendant's residence provided the following. Detective Frank Zdankiewicz is employed with the Woodhaven Police Department and, in early June 2007, while assigned to the Downriver Area Narcotics Organization (DRANO), was investigating possible controlled substance activity at 829 N. Green Street, Detroit, Michigan. (Search Warrant Affid. at ¶¶ 3.1, 3.4.) Detective Zdankiewicz had received an anonymous tip that there was narcotic activity occurring at 829 N. Green Street. (*Id.* at ¶ 3.3.)

On June 4, 2007, between 7:30 p.m. and 9:30 p.m., members of the DRANO crew were surveilling the residence at 829 N. Green Street. They observed seven vehicles arrive at the residence and leave after short stays. They also observed several people walk into the residence and leave after a short stay. (*Id.* at ¶ 3.5.)

On that same night, around 9:30 p.m., the DRANO crew observed a burgundy 2006 Ford F-150, license plate number 3fqp43, arrive at 829 N. Green Street. After a short stay, the vehicle left the residence and drove south on I-75. The vehicle was kept under constant surveillance and was stopped on southbound Dix, south of I-75, by Trooper Kim Lawson for a traffic violation. The driver, whose name was identified in the search warrant affidavit, consented to the search of his person and his vehicle. Melvindale Canine Officer Allen found a clear plastic baggie containing suspected cocaine in the driver's front pocket. The Officer also found two folded packets of suspected cocaine in the driver's pocket. The

total weight was about six grams. DRANO Officer, Lieutenant Riopelle tested a small quantity, and it tested positive for cocaine. (*Id.* at ¶¶ 3.6-3.8.)

Lieutenant Weigand interviewed the driver, and he told the police that he purchased the two packets of cocaine from Darrell Bryant at 829 N. Green Street, Detroit, Michigan, for $40. The driver also told the police that he had previously purchased cocaine from Bryant at that residence on numerous occasions. (*Id.* at ¶ 3.9.)

Detective Zdankiewicz prepared the search warrant affidavit that included this information, seeking a warrant to search 829 N. Green Street that same evening. State Magistrate Judge McNally of the 33rd District Court authorized the search warrant. (6/4/07 Search Warrant.) The search warrant identified the single family, two-story home located at 829 N. Green Street, Detroit, Michigan, its basement, garage, and any buildings affixed to the curtiledge as the places to be searched. The items to be seized included:

> All suspected controlled substances, all items used in connection with the sale, manufacture, use, storage, distribution, transportation, delivery and/or concealment of controlled substances. All books, records and tally sheets indicating sales of controlled substances and any items obtained through the sale of controlled substances. All computer's [sic], data storage devices, hard drives, and software that contain documentation of illegal drug transaction. Any and all assets and property related to narcotic trafficking, storage units or safety deposit box keys due to the fact that these places are often used by narcotic traffickers to conceal/hide their narcotics and narcotic proceeds. All weapons and items establishing ownership, control, occupancy, or possession of the above described place and any and all evidence of illegal activity.

(*Id.*)

DRANO officers executed the search warrant at 12:30 a.m. on June 5, 2007. They found an ashtray and card with white powder on it that tested positive for cocaine, a few bags of marijuana and seeds, $900 cash located in a vase in the living room, a digital scale, and packaging materials.

3

## II. Analysis

Defendant argues that the search warrant affidavit lacks probable cause because the information contained in it was stale and lacked reliability. The government responds that (1) because Defendant's Fourth Amendment challenge focuses solely on the search warrant affidavit, there is no need for an evidentiary hearing, and (2) the information provided in the affidavit was sufficient to support a magistrate's finding of probable cause to issue the search warrant.

The Court begins its analysis with a discussion of the general principles that apply here.

### A. General Principles

The applicable principles were recently set out by the Sixth Circuit in *United States v. Lyna Brooks*, ___ F.3d ___, ___, 2010 WL 393647 (6th Cir. Feb. 5, 2010).

> To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Whether the affidavit gives rise to this fair probability "depends on the totality of the circumstances." [*United States v.*] *Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Gates*, 462 U.S. at 230). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id.* (quoting *Gates*, 462 U.S. at 231).
>
> When a warrant applicant seeks to search a specific location, the affidavit must establish "a nexus between the place to be searched and the evidence to be sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Frazier*, 423 F.3d at 532 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

> If the affidavit includes hearsay from a confidential informant, the reviewing court "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information . . . ." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). "While independent corroboration of a confidential informant's story is not a *sine quo non* to a finding of probable cause, . . . in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532 (citations omitted).
>
> Furthermore, in seeking to establish probable cause to obtain a search warrant, the affidavit may not employ "stale" information, and whether information is stale depends on the "inherent nature of the crime." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). Whether information is stale in the context of a search warrant turns on several factors, such as "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Hammond*, 351 F.3d 765, 771-72 (6th Cir. 2006) (quoting *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001)). In the context of drug crimes, information goes stale very quickly "because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009).

*Id.* at *4.

### B. Probable Cause is Established

Despite Defendant's arguments to the contrary, probable cause to search the residence located at 829 N. Green Street, Detroit, Michigan was established. Although there is no date provided in the affidavit identifying when police received an anonymous tip about narcotics activity occurring at 829 N. Green Street, police surveillance at that address on June 4, 2007 corroborated the information provided in that tip. More importantly, the information provided in the remaining paragraphs of the affidavit are far from stale. All of the events corroborating the tip about drug trafficking occurring at the residence at 829 N. Green Street, including the traffic stop that produced additional information from a named

5

source that drugs were just sold from that residence, all occurred during the evening of June 4, 2007. The search warrant was obtained on June 4, 2007 and executed in the very early morning of June 5, 2007. Given the already on-going investigation of the residence at 829 N. Green Street, the anonymous tip, the DRANO officers' corroborating observations during the night of June 4, 2007, the discovery of cocaine during the traffic stop, and the admissions by the driver that he had just purchased the cocaine from that address, the magistrate had sufficient information from which to conclude that probable cause existed to authorize the search that was executed on June 5, 2007.

## III. Conclusion

For the above-stated reasons, Defendant Darrell Bryant's motion to suppress is DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 23, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 23, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager